IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES DIGGS, :
: 4:07-cv-1505
Petitioner, :
: Hon. John E. Jones III
v. :
: Hon. William T. Prince
DAVID DIGUGLIELMO, *et al.,* :
:
Respondents. :

**MEMORANDUM**

**February 16, 2011**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge William T. Prince (Doc. 20), filed on November 12, 2010 which recommends that the petition for writ of habeas corpus filed by Petitioner Charles Diggs ("Petitioner" or "Diggs") be denied. After being granted an extension of time within which to do so, Petitioner filed objections to the R&R on January 28, 2011. (Doc. 24). Accordingly, this matter is ripe for our review.

For the reasons that follow, the R&R shall be adopted, the Petitioner's objections overruled and the petition shall be denied.

**I.  BACKGROUND**

### A. Claims in the Petition

In the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 Diggs presents two grounds for overturning his conviction: (1) that by failing to disclose certain items of evidence that defense counsel could have used to show bias on the part of the prosecution's star witness, Jack Singer ("Singer"), the prosecutor violated the duty imposed by *Brady v. Maryland*, 373 U.S. 83 (1963); and (2) that by failing to correct testimony from the star witness that was known to be false, the prosecutor violated the dictates of *Giglio v. United States*, 405 U.S. 150 (1972).

As a threshold matter, we note that Magistrate Judge Prince recommends that the only claim to be properly considered on the instant petition is Diggs' *Brady* claim. The Magistrate Judge aptly noted that Diggs did not properly preserve the *Giglio* claim in the state courts, thus it cannot be considered by us. *See Stevens v. Del. Corr. Ctr.*, 295 F. 3d 361, 369 (3d Cir. 2002)(quoting *Whitney v. Horn*, 280 F. 3d 240, 250 (3d Cir. 2002))(a habeas petitioner must "fairly present" all federal claims to the highest state court before bringing them in federal court). Diggs does not object to this recommendation, and because we agree with the Magistrate Judge on this point, we shall only consider the Petitioner's *Brady* claim herein.

### B. Case History

In 1977, Diggs was convicted, after a jury trial, of kidnaping and murder in the first degree of Nancy White. He was sentenced to life in prison for the murder and a consecutive term of ten to twenty years for the kidnaping. Diggs challenged his conviction through a direct appeal, a federal habeas corpus action, and a petition in state court under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541-46, all unsuccessfully.

On November 6, 2000, Diggs filed a second PCRA petition, claiming he was denied a fair trial and due process. In support of this claim, Diggs referred to a statement in the Commonwealth's brief to the Superior Court filed in Diggs' first PCRA action, which read: "The Commonwealth presented the testimony of Jack Singer. While incarcerated at Erie County as a parole violator on a burglary conviction, Singer contacted the State Police in Harrisburg and the Dauphin County District Attorney's Office in June 1976 representing that he had information concerning the case." (Doc. 20, p. 2). This information, that Singer had contacted the police while incarcerated, had not come to light in the 1977 trial.[1] Thus, Diggs claimed that this statement concerning Singer revealed that he was

---

[1] Singer had written four letters to the District Attorney that were not disclosed to the defense.

convicted on the basis of false testimony, and that evidence potentially impeaching Singer had been withheld in violation of *Brady*.

In January 2002, the PCRA court denied Diggs' petition, finding that Diggs had failed to show that a miscarriage of justice had occurred. On appeal from this decision, the Superior Court remanded for an evidentiary hearing to determine Singer's status at the time of trial and the time of his first contact with the District Attorney; what the District Attorney knew about Singer's criminal history; and, if Singer's testimony was false, why it was not corrected.

During the PCRA court's evidentiary hearings, which spanned from late 2002 until spring 2004, the parties engaged in discovery, filed briefs in support and opposition, and presented oral arguments. On July 15, 2005, the PCRA court filed a memorandum and order indicating its intent to dismiss Diggs' second PCRA petition. On July 19, 2005, over no objections, the court filed a final order of dismissal. Diggs appealed to the Superior Court on August 29, 2005.

The Superior Court ultimately concluded that there was no *Brady* violation, affirming the reasoning and decision of the PCRA court and providing five reasons for its conclusion. First, under the rules of criminal procedure as they existed at the time of the trial, the Defendant had no right to criminal discovery except in the case of written confessions, thus under Pa. R. Crim. P. 310 (repealed Jan. 1, 1978),

4

the defense was not entitled to discovery of Singer's four letters.  Second, the Application Concerning Material Witness regarding Singer was docketed seven months prior to trial, so the defense was not improperly denied information abut this witness.  Third, Singer's motor-vehicle offense did not trigger *Brady* because that charge did not constitute *crimen falsi* (i.e. bear upon the witness's honesty and truthfulness).  Fourth, Diggs did not prove that there was any promise or deal between Singer and the Commonwealth promising leniency for testimony, indicating that there was no improper denial of evidence of potential bias.  Finally, the Superior Court concluded that Diggs suffered no prejudice as a result of the Commonwealth's alleged failure to disclose information about Singer, since again, the defense was aware of Singer as a potential witness and Singer's criminal background was a matter of public record.   Finally, the Superior Court was convinced that the evidence about Singer was not material under *Brady*.

## II. STANDARD OF REVIEW

### A. Review of Magistrate Judge's Report

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

**B.  AEDPA**

The AEDPA provides the standard of review for a federal court considering a petition for a writ of habeas corpus by a petition in state custody, serving a sentence for a state court conviction.

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The question of whether the state court applied law or found facts unreasonably "is an objective one – a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." *Jacobs v. Horn*, 395 F. 3d 92, 100 (3d Cir. 2005)(citing *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003)). Further, state court factual findings are presumed correct; the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

Within the R&R, Magistrate Judge Prince evaluated the Petitioner's claim that the prosecution's failure to disclose the Singer letters violated the *Brady* doctrine.[2] Magistrate Judge Prince reasoned that even though the Singer letters can be considered material under *Brady*'s first prong, there is no indication that the

---

[2] In order for a prosecutor to have a duty under *Brady*, the evidence in question must pass a three-part test as well as meet the requisite standard of materiality. The three part test requires that (1) the evidence must be favorable to the accused, whether it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State either willfully or inadvertently; and (3) the defendant must have suffered prejudice. *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *accord Lewis v. Horn*, 581 F. 3d 92, 108 (3d Cir. 2009). Evidence is material under *Brady* "if there is reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Youngblood v. West Virginia*, 547 U.S. 867, 870 (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)).

7

letters were suppressed by the State under the second prong, and thus Diggs fails to satisfy one of the essential elements of the *Brady* test. Magistrate Judge Prince noted that the Commonwealth filed an Application of the Commonwealth Concerning Material Witness in regard to Jack Singer on September 9, 1976, approximately seven months before the Petitioner's trial. The Application stated that "the Commonwealth has conducted in-depth interviews with Mr. Singer and has determined and now avers that he has important, vital, and critical testimony." This put the defense expressly on notice not only that Singer would be a witness at trial, but that there might be related documentary evidence of use to the defense. (Doc. 20, p. 11). Magistrate Judge Prince noted that although trial counsel, Robert Tarman, was not personally served with the Commonwealth's Application, the Public Defender's office was; and, of course, the docket was a matter of public record. Thus, Magistrate Judge Prince concluded, despite Attorney Tarman not having been personally served, an exercise in due diligence would have revealed the September 9, 1976 docket entry, thus, the evidence was not "suppressed." We agree.

Magistrate Judge Prince also addressed Petitioner's argument that, despite his not having made any request at trial for exculpatory evidence generally or for Singer's extrajudicial statements specifically, the Commonwealth still had a duty

8

to produce the letters pursuant to *United States v. Agurs*, 427 U.S. 97 91976), which establishes principles for disclosure of exculpatory evidence in the absence of any request by the defense.[3] In its underlying decision, the Superior Court reasoned that the prosecution would have committed constitutional error by failing to produce Singer's letters voluntarily only if the four letters would create a reasonable doubt that did not otherwise exist. The Superior Court went on to observe that the charges Singer mentioned in his letters were dismissed or withdrawn at least six months before he testified at trial, and there was no evidence that the *nolle prosequi* entered in Singer's cases was the result of a deal with the Commonwealth. In fact, when Singer testified in 1977, he was not facing charges at all, was not imprisoned, and thus could not have been motivated by a deal with the Commonwealth relative to the charges that had ceased to exist. Magistrate Judge Prince concluded, and we wholly agree, that these considerations, especially when combined with the willingness that Singer expressed in his fourth letter to testify regardless of whether the charges against him were dropped, render entirely rational the Superior Court's conclusion that the omission of the four letters at trial did not by itself create reasonable doubt. To be sure, regardless of whether a *de*

---

[3] If a prosecutor is in possession of evidence that is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce," then the prosecutor has a duty to provide the defense with this clearly exculpatory evidence even if the defense had made only a general request for production or no request at all. *Agurs*, 427 U.S. at 107.

*novo* review might result in a different outcome, a petition for writ of habeas corpus under § 2254 may only be granted if the state-court application of federal law was objectively unreasonable. Here, the Superior Court's application was manifestly reasonable. We thus agree with the Magistrate Judge's conclusions, and accordingly shall adopt his recommendation in full.

## IV. CONCLUSION

Based on all of the foregoing, we shall adopt the Magistrate Judge's R&R and deny the Petition. An appropriate Order shall issue.